## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 22 2017, 6:08 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Megan B. Quirk | Curtis T. Hill, Jr. |
| Muncie, Indiana | Indiana Attorney General |
| | Caryn N. Szyper |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| William O. Jackson, Jr., | December 22, 2017 |
| *Appellant-Defendant,* | Court of Appeals Case No. 18A02-1704-CR-949 |
| v. | Appeal from the Delaware Circuit Court. |
| | The Honorable Marianne Vorhees, Judge. |
| State of Indiana, | Trial Court Cause No. |
| *Appellee-Plaintiff.* | 18C01-1701-F5-4 |

**Sharpnack, Senior Judge**

# Statement of the Case

[1] William O. Jackson, Jr., appeals, contending that his advisory sentence of three years executed in the Indiana Department of Correction was inappropriate for his conviction of Level 5 felony domestic battery.[1] We affirm.

# Issue

[2] Jackson presents the following issue for our review: whether his executed sentence of three years is inappropriate in light of the nature of the offense and the character of the offender.

# Facts and Procedural History

[3] Beginning on the evening of December 26, 2016, and continuing into the early morning hours of December 27, 2016, Jackson and his girlfriend of more than six years, D.F., were embroiled in verbal arguments at their home. Jackson, who was on pretrial, electronic, home detention for several pending felony charges in another matter, had been drinking alcohol and using cocaine and heroin.

[4] At approximately 8:30 p.m., D.F. threw a salt shaker at Jackson and picked up a hammer to threaten him. D.F.'s cousin, who was present, intervened to calm the situation before it escalated. Police officers were called and dispatched to

---

[1] Ind. Code § 35-42-2-1.3(c)(1) (2016).

the residence. Neither Jackson nor D.F. exhibited any signs of physical injury and each refused to leave the house. After that, the officers left the residence.

[5] However, Jackson and D.F. continued arguing after the officers left. At some point, Jackson told D.F. that he "hated her." Tr. Vol. II, p. 58. D.F. put on her boots and grabbed her coat to leave the house. When she went to the door, Jackson struck her in the back of the head with the base of a telephone three or four times, causing D.F.'s head to bleed profusely. Jackson then threatened D.F. by saying that he was going to disfigure her. After hearing that, D.F. ran to her mother's house, which was nearby, and D.F.'s sister drove her to Ball Memorial Hospital for treatment.

[6] Meanwhile, at 2:43 a.m., officers were dispatched to D.F. and Jackson's residence following an uncompleted call to 911. D.F. was no longer at the house when the officers arrived. Jackson answered the door and had no observable signs of injuries. He explained to officers that he and D.F. had been in a verbal altercation and that she had left with a friend. He claimed that the officers were not needed at the residence.

[7] Approximately twenty minutes later, however, at 3:04 a.m., officers were dispatched to the hospital where they found D.F. with a towel soaked in a red substance covering her head. After removing the towel, officers observed a large knot about the size of a golf ball on D.F.'s head that was actively bleeding. Officers photographed D.F.'s injury. She told them that she was the victim of a battery and that she wanted to make a report.

[8] Officers then returned to D.F. and Jackson's residence where they found blood on the porch, the wall, the couch, and the base of the telephone. They also recovered D.F.'s coat, which was soaked with blood.

[9] The State charged Jackson with class A misdemeanor domestic battery, with a Level 5 felony enhancement due to Jackson's prior domestic battery conviction. Jackson's jury trial was bifurcated and, at the conclusion of both phases, he was found guilty as charged. The trial court sentenced Jackson to the advisory term of three years executed in the Indiana Department of Correction with the recommendation that he be placed in purposeful incarceration through the Therapeutic Community Program. Jackson now appeals.

## Discussion and Decision

[10] Jackson argues that his advisory sentence of three years executed in the Department of Correction with a recommendation that he placed in purposeful incarceration through the Therapeutic Community Program, is inappropriate in light of the nature of the offense and the character of the offender.

[11] Although Jackson attempts to argue that his sentencing placement–an executed sentence in the Department of Correction as opposed to probation–was inappropriate; it represents a blending of arguments involving an abuse of discretion in sentencing, and an inappropriate sentence. Jackson has failed to present a cogent argument in terms of an abuse of discretion. Therefore, we address his sentencing challenge under Indiana Appellate Rule 7(B).

[12] Our Supreme Court has set forth the standard of review as follows:

> Indiana Appellate Rule 7(B) provides, '[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender.' The principal role of appellate review should be to attempt to leaven the outliers . . . but not achieve a perceived "correct" result in each case. Defendant has the burden to persuade us that the sentence imposed by the trial court is inappropriate.

*Shoun v. State*, 67 N.E.3d 635, 642 (Ind. 2017).

[13] In considering the nature of Jackson's offenses, the advisory sentence is the starting point the Legislature has selected as an appropriate sentence. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. When determining the appropriateness of a sentence that deviates from an advisory sentence, we consider whether there is anything more or less egregious about the offense as committed by the defendant that "makes it different from the typical offense accounted for by the legislature when it set the advisory sentence." *Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011).

[14] Turning to the nature of Jackson's offense, the facts reveal that after arguing with D.F., such that police officers were called to the house, they continued the verbal altercation. When Jackson told D.F. that he hated her, she put on her boots and grabbed her coat in an effort to leave the house. Jackson responded by repeatedly striking D.F. on the back of the head with the base of a telephone. She developed a wound that was the size of a golf ball from which she bled profusely. Jackson then told her that he was going to disfigure her. D.F. ran to

her mother's house, which was nearby, after which her sister took her to the hospital for treatment of her injuries.

[15] Nothing about Jackson's argument regarding the nature of the offense suggests that a downward revision in his sentence is warranted.

[16] Turning to Jackson's character, we also conclude that there is nothing in his character warranting anything less than an advisory sentence executed in the Department of Correction. Jackson's criminal history, which is significant, includes five prior felonies and three domestic battery offenses committed against the same victim.

[17] Additionally, when Jackson committed the instant offense he was released on pretrial, electronic, home detention for pending felony charges in a different case. He had been using alcohol, heroin, and cocaine at home at the time he committed his current offense. Further, he admitted that he had used heroin in jail prior to his presentence investigation interview and admitted to using drugs regularly while on home detention. Jackson has not sought treatment for his drug addiction, which has been an issue for him since approximately 1992, despite having opportunities for rehabilitation.

[18] When police officers arrived at the house, Jackson claimed that nothing more than a verbal altercation had continued between the two. He further downplayed the incident by also stating that D.F. had left with a friend. Because officers did not observe any injuries on Jackson, they left the scene.

[19]     The jury was in the best position to determine what weight to give to D.F.'s participation in the ongoing argument, and chose to believe her version in entering a verdict against Jackson. Jackson's attempts to introduce her actions into our review are not appropriate. It is his character and the nature of his offense against her that is subject to our review.

[20]     Jackson has not established that his advisory sentence with opportunities to improve himself and potentially receive sentence modification are inappropriate in light of the nature of the offense and the character of the offender.

# Conclusion

[21]     In light of the foregoing, the trial court's decision is affirmed.

[22]     Affirmed.

May, J., and Altice, J., concur.